USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 10/9/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN M. KRELL,

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

24-CV-03939 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

By motion dated February 25, 2026 (Dkt. 24), plaintiff Steven M. Krell seeks an order, pursuant to § 206(b) of the Social Security Act, 42 U.S.C. § 406(b), approving an award of $53,835 in fees to his attorneys, representing 25% of the past-due benefits awarded to him by the Social Security Administration (SSA), for the attorneys' work in the two federal actions (including this one) that led to the favorable result before the agency. For the reasons that follow, the motion will be granted in the full amount requested. Upon receipt of the funds, counsel must remit $11,900 to plaintiff, representing fees previously awarded pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

## Background

Plaintiff applied for disability benefits on June 25, 2020, alleging disability since December 26, 2019, but the SSA denied his application, *see* Compl. (Dkt. 1) ¶¶ 5-6, and the Commissioner's decision became final on October 6, 2022. *Id.* ¶ 8. On December 5, 2022, plaintiff commenced a civil action in this Court challenging the Commissioner's decision. *See Krell v. Comm'r of Soc. Sec.*, No. 22-CV-10264 (S.D.N.Y. Dec. 5, 2022), Dkt. 1 (hereafter, *Krell I*). On May 3, 2023, plaintiff retained Daniel A. Osborn and Lindsay M. Trust of Osborn Law, P.C. (Osborn Law) to represent him in *Krell I*, *see* Trust Decl. (Dkt. 25) Ex. 1 at ECF pp. 2-3 (Fee Ag.). Plaintiff agreed that if his case were "successful in Federal court and [were] sent back to the Social Security

Administration for further evaluation," counsel would be entitled to "attorney's fees and reimbursement of costs for work in Federal Court" equal to the greater of (1) "[s]uch amount as my attorney may be awarded pursuant to the Equal Access to Justice Act," or (2) "[s]uch amount as my attorney may be awarded, pursuant to 42 U.S.C. Section 406(b), from any past-due benefits to which I may be entitled, **but not to exceed twenty-five percent (25%) of such past-due benefits**." Fee Ag. at ECF p. 2.

Osborn and Trust appeared on plaintiff's behalf the following day. *See* Dkts. 13-14 in *Krell I*. On June 21, 2023, after the administrative record was filed, plaintiff filed a motion for judgment on the pleadings and supporting brief. *See* Dkts. 19, 20 in *Krell I*. On August 18, 2023, by stipulation, *Krell I* was remanded to the SSA for further administrative proceedings. *See* Dkt. 23 in *Krell I*. On October 10, 2023, by stipulation, the court awarded $7,200 in EAJA fees to Osborn Law for counsel's work in *Krell I*. *See* Dkt. 26 in *Krell I*; Trust Decl. ¶ 7.

Following the remand, and following further proceedings before the SSA, plaintiff's application was again denied, and the Commissioner's decision became final on May 6, 2024. *See* Compl. ¶ 12. On May 14, 2024, plaintiff again retained attorneys Osborn and Trust of Osborn Law to challenge the Commissioner's decision in this Court, and entered into a second, identical fee agreement with the firm. *See* Trust Decl. Ex. 1 at ECF pp. 4-5.

On May 21, 2024, plaintiff commenced this action through Osborn Law. On November 20, 2024, after the administrative record was filed, plaintiff filed a motion for judgment on the pleadings and supporting brief. *See* Dkts. 13, 14. On January 22, 2025, by stipulation, this action was remanded to the SSA for further administrative proceedings. *See* Dkt. 18. On April 23, 2025, by stipulation, this Court awarded $4,700 in EAJA fees to Osborn Law for counsel's work in this

case. *See* Dkt. 21. Together with the $7,200 in EAJA fees awarded in *Krell I*, Osborn Law has received a total of $11,900 in EAJA fees for its work on plaintiff's behalf. Trust Decl. ¶ 14.

After the second remand to the SSA, and after another administrative hearing, the Administrative Law Judge found plaintiff disabled and entitled to benefits. *See* Trust Decl. ¶ 15. On January 13, 2026, the SSA issued a Notice of Award advising plaintiff that he was entitled to past-due benefits, from which the sum of $53,835 (25%) was withheld to cover a possible attorneys' fee request. *See id.* ¶¶ 16-17; *id.* Ex. 4 (Notice of Award) at 4. Plaintiff now seeks an award of the full $53,835.00 pursuant to § 406(b).

The Commissioner does not object to plaintiff's motion but asks that the Court consider the reasonableness of the requested award, and that it direct plaintiff's counsel to reimburse plaintiff the EAJA fees that Osborn Law previously received. *See* Dkt. 27.

## **Legal Standards**

The Social Security Act provides:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C § 406(b)(1)(A).

When considering a motion for attorneys' fees pursuant to § 406(b), the court first determines whether it was timely filed and then reviews the request for reasonableness. *See Sinkler v. Berryhill*, 932 F.3d 83, 86-91 (2d Cir. 2019). The "applicable limitations period for filing § 406(b) motions" is the fourteen-day period set out in Fed. R. Civ P. 54(d)(2)(B). *Sinkler*, 932

F.3d at 87-88. Thus, a § 406(b) motion must ordinarily be filed within fourteen days after the plaintiff receives the notice of award from the SSA. *Id*. at 87. However, this rule is "not absolute," and courts can "enlarge th[e] filing period where circumstances warrant," *id*., provided that the plaintiff offers a "factual basis to support a claim that it was 'reasonable' to delay the filing[.]" *Id.* at 90.

As to the reasonableness of the requested fee, the Supreme Court has made it clear that § 406(b) "does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). Rather, § 406(b) "calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Id*. "Factors to be considered when determining whether an award is reasonable include: (a) whether the contingency fee is within the twenty-five percent limit; (b) whether the retainer was the result of fraud or overreaching by the attorney; and (c) whether the attorney would enjoy a windfall relative to the services provided." *Pelaez v. Berryhill*, 2017 WL 6389162, at *1 (S.D.N.Y. Dec. 14, 2017) (quoting *Vaupen v. Colvin*, 2017 WL 2304015, at *2 (S.D.N.Y May 8, 2017)), *adopted*, 2018 WL 318478 (S.D.N.Y. Jan 3. 2018).

**Application**

I first address the question of timeliness. The SSA issued the Notice of Award on January 13, 2026, addressed to plaintiff, who presumptively received it three days later. *See Sinkler*, 932 F.3d at 89 n.5. However, the SSA did not send a copy to Osborn Law, which instead received the Notice of Award on February 11, 2026, via email from the law firm that represented plaintiff before the SSA. *See* Trust Decl. ¶ 18 & Ex. 5. The pending motion was filed on February 25, 2026, fourteen days after it was received by Osborn Law. Since the overall delay was brief, and since

plaintiff has presented facts demonstrating that counsel's conduct was "reasonable," *Sinkler*, 932 F.3d at 90, I find that the motion is timely.

Turning to the merits, I find that the *Pelaez* factors all weigh in favor of plaintiff's fee request. The $53,835 award requested represents 25% of plaintiff's past-due benefits, and is thus within the statutory limit set by § 406(b)(1)(A) and contemplated by the fee agreements that plaintiff signed. Moreover, there is no suggestion in the record that the fee agreements were the result of fraud or overreach. Thus, the only remaining question is whether the requested award "is so large as to be a windfall." *Wells v. Sullivan*, 907 F.2d 367, 372 (2d. Cir. 1990).

Osborn Law attorneys Osborn, Trust, and Jonathan Miley spent a total of 48.1 hours working on plaintiff's federal cases. *See* Trust Decl. Exs. 2 & 3 (timesheets). Additionally, an Osborn Law paralegal spent a total of 6.5 hours working on *Krell I* and this action. *Id*. In each case, plaintiff's counsel were required to review a lengthy administrative record (running to 896 pages in the first case, *see* Dkt. 12 in *Krell I*, and 1293 pages in this case, *see* Dkt. 10), research applicable law, and prepare plaintiff's memorandum of law in support of his motion for judgment on the pleadings, all of which was necessary to secure the remands that ultimately led to the award of benefits to plaintiff. If the paralegal time is deducted at the rate of $100 per hour, the $53,835 fee requested implies a *de facto* hourly rate of $1,105.72 for the time of the Osborn Law attorneys litigating on plaintiff's behalf. Although it would be difficult to justify such a rate in a social security case "as part of a traditional 'lodestar' analysis, a 'lodestar' analysis does not apply" under § 406(b). *Baron v. Astrue*, 311 F. Supp 3d 633, 637 (S.D.N.Y 2018). "[E]ven a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Fields v. Kijakazi*, 24 F.4th 845, 854 (2d Cir. 2022). Thus, before reducing a § 406(b) fee award on "windfall" grounds, our Circuit requires that the court consider:

(i) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do";

(ii) "the nature and length of the professional relationship with the claimant – including any representation at the agency level";

(iii) "the satisfaction of the disabled claimant"; and

(iv) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result."

*Id.* at 854-55.

Here, the "ability and expertise of the lawyers," *Fields*, 24 F.4th at 854, furnishes no basis for reducing the requested fee. The total time billed does not appear unreasonable, given the work involved, and the resulting remands – achieved, in both cases, by stipulation once plaintiff served his motion papers – speak favorably both to counsel's experience and to their efficiency. The nature and length of the professional relationship with plaintiff likewise furnishes no basis for reducing the requested fee. Although Osborn Law did not represent plaintiff before the SSA, it litigated on his behalf in two successive federal cases, challenging two separate adverse decisions by the Commissioner, before it was in a position to seek fees under § 406(b). Further, given the successful outcomes in this Court, followed by a robust award after the second remand, the Court presumes, in the absence of any contrary evidence, that plaintiff is satisfied with the quality of his representation by Osborn Law.

Finally, there is never any guarantee that a contingency case will be successful. "Lawyers who operate on contingency – even the very best ones – lose a significant number of their cases and receive no compensation when they do." *Fields*, 24 F.4th at 855; *see also Wells*, 907 F.2d at 371 ("[P]ayment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk."). Here, counsel faced an uncertain outcome but persisted in the representation and ultimately won a favorable result for the plaintiff. For these reasons, I

conclude that the $53,835 now requested does not constitute a prohibited windfall to plaintiff's attorneys.

As noted above, the Commissioner asks that I direct plaintiff's counsel to reimburse plaintiff the EAJA fees previously received by counsel. This proposal is consistent with the approach favored in this Circuit. *See*, *e.g.*, *Janes v. Berryhill*, 498 F. Supp 3d 540, 542 (S.D.N.Y 2020) (noting that where attorney fees are awarded under both EAJA and § 406(b), it has long been the rule that "the claimant's attorney must 'refun[d] to the claimant the amount of the smaller fee'") (quoting *Gisbrecht*, 535 U.S. at 796). Consequently, I will approve the requested § 406(b) award in the full amount of $53,835 and require counsel to refund – to plaintiff – the EAJA funds previously awarded.

**Conclusion**

For the reasons set forth above, plaintiff's motion (Dkt. 24) is GRANTED. Osborn Law is awarded the sum of $53,835 as attorneys' fees, to be paid out of plaintiff's past-due benefits, from the monies retained by the Commissioner for that purpose. Plaintiff's counsel are directed, upon receipt of the § 406(b) award, to refund to plaintiff the EAJA fees previously awarded, in the amount of $11,900.

Dated: New York, New York
October 9, 2026

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**